**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Plaintiff,
v.
RAUL MORALES-GERVACIO,
Defendant.

Case No.: 3:19-mj-24164-BGS-DMS-1

**ORDER DENYING DEFENDANT'S APPEAL AND AFFIRMING JUDGMENT OF CONVICTION**

Defendant Raul Morales-Gervacio appeals his misdemeanor conviction, entered after a bench trial before United States Magistrate Judge Bernard G. Skomal, for attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1). This appeal has been pending since July 27, 2020, but for unknown reasons was not identified by the Court as fully briefed and ready for disposition. The Court apologizes for the delay. Having now reviewed the matter, the Court respectfully denies Defendant's appeal and affirms his judgment of conviction.

**I.**

**BACKGROUND**

**A. Factual Background**

On the evening of October 8, 2019, Border Patrol Agent Brian Miller was operating a Mobile Surveillance Capability scope (a device that detects heat and displays a person's

silhouette) from an elevated position near the southern border. (Tr. Mot. Hr'g/Trial Proceedings, ECF No. 30 at 6–7, 16 [hereinafter Tr.].) The nearest port of entry was about 25 miles away, and an 18-foot fence guarded the border in the area. (*Id.* at 8, 13.) A few minutes after 7:00 p.m., Miller saw two people jogging north, roughly 50 to 70 yards north of the border fence and east of the town of Jacumba Hot Springs. (*Id.* at 7, 15–16.) He relayed his observations to other agents. (*Id.* at 10.) When a responding agent parked about 40 yards north of the two individuals, Miller saw them duck down and appear to hide behind a bush. (*Id.* at 10–12.)

Miller guided Agent Michael Smith over the radio. (*Id.* at 14, 20–21.) It was getting dark, and Smith walked south with a flashlight. (*Id.* at 21.) Smith found Defendant and another man in an open field "crouched down, kind of trying to get into the brush." (*Id.* at 21–22.) Defendant did not flee. (*Id.* at 27.) Smith identified himself in Spanish and questioned the men's citizenship. (*Id.* at 23.) Defendant replied that he was a Mexican citizen, that he had no documents allowing him to enter or remain in the United States, and that he was in the country illegally. (*Id.* at 23–24.) Smith arrested both men. (*Id.* at 24–25.)

At the Border Patrol station, Agent Allen Botello advised Defendant of his *Miranda* rights in Spanish, and Defendant agreed to speak. (*Id.* at 30–33.) Defendant stated that he was born in Mexico and is a Mexican citizen, that he had no documents permitting him to enter the United States, that he had not been examined by an inspection officer, and that he was headed to Los Angeles. (*Id.* at 31–34.) He also said he was coming to see his children or family, that he feared "narco trafficking" in Guerrero, and that he feared harm if he returned to Mexico. (*Id.* at 35–36.)

### B. Procedural History

The Government filed a complaint charging Defendant with misdemeanor improper attempted entry by an alien under 8 U.S.C. § 1325(a)(1). (ECF No. 1.) He filed a pretrial motion seeking a jury trial and dismissal of the complaint on constitutional grounds. (ECF No. 13.) The magistrate judge denied the motion and proceeded to a bench trial. (Tr. 3.)

After the Government rested, Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the Government had not corroborated Defendant's confession. (*Id.* at 37.) The magistrate judge denied the motion. He found that Defendant's "jogging north, as well as the proximity to the border and not at a port of entry," was "independent evidence, circumstantial evidence as it might be," that Defendant "had the specific intent to be free from official restraint." (*Id.* at 40–41.) He continued:

> [I]t was Agent Smith who testified that they were crouched behind the bush and appeared to be trying to cover themselves, go deeper inside the bush, trying to get into the brush. The clear inference there is they were trying to hide from the border patrol agent. It was in a rural area. There's no indication that they had come from Jacumba Hot Springs, they were going to Jacumba Hot Springs, they were in the area, under this bush, for any other reason other than, in my opinion, trying to be free from official restraint.

(*Id.* at 41.)

The magistrate judge found Defendant guilty, reasoning that "[t]he proximity of the fence, the running north and hiding in the bushes indicate that he wanted to come here illegally, as well as his statements that that was his plan, to come in illegally and go to Los Angeles to be with his family, and also, to some degree, escape from Mexico because of the violence and he was afraid to be in Mexico." (*Id.* at 42.)

Defendant filed a notice of appeal on January 22, 2020. (ECF No. 20.) He filed his opening brief on June 29, 2020. (ECF No. 35 [hereinafter Br.].) The Government filed an opposition on July 13, 2020. (ECF No. 36.) Defendant filed a reply on July 27, 2020. (ECF No. 37.)

## II.

## LEGAL STANDARD

A defendant convicted by a magistrate judge may appeal the judgment to a district judge. 18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2)(B). On such an appeal, the defendant "is not entitled to a trial de novo"; rather, "[t]he scope of the appeal is the same as in an

appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The Court therefore reviews the magistrate judge's legal conclusions de novo and his factual findings for clear error. *See United States v. Powers*, 129 F.4th 617, 623 (9th Cir. 2025).

**III.**

**ANALYSIS**

Ninth Circuit precedent squarely forecloses several of Defendant's arguments. Defendant argues that 8 U.S.C. § 1325(a)(1) violates the non-delegation doctrine and is unconstitutionally vague. The Ninth Circuit has held that "Section 1325(a)(1) does not violate the non-delegation doctrine, nor is it unconstitutionally vague." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266 (9th Cir. 2021). Defendant also argues that his prosecution on the "Streamline docket" violated equal protection. By "Streamline docket," Defendant refers to the fact that prosecutors did not bring his offense through the Central Violations Bureau ("CVB"). The CVB "is a national center charged with processing U.S. District Court Violation Notices (tickets) issued and payments received for offenses committed on federal property . . . ." https://www.cvb.uscourts.gov/ (last visited October 6, 2026). The Ninth Circuit rejected this argument in *United States v. Ayala-Bello*. 995 F.3d 710 (9th Cir. 2021). *Ayala-Bello* also foreclosed Defendant's argument that prosecuting him on the "Streamline docket" constituted "selective prosecution or selective enforcement" because the Southern District of California U.S. Attorney's Office's "disparate treatment of CVB and § 1325 defendants has a discriminatory effect and a discriminatory purpose." (*Compare* Br. 15 *with* 995 F.3d at 714 ("At best, the government's policy has a disparate impact on aliens, since only aliens can be charged with illegal entry. But disparate impact does not prove disparate treatment."). The Court has similarly rejected Defendant's argument that bringing his prosecution on the "Streamline docket" violated Due Process. *United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *15 (S.D. Cal. Sept. 11, 2020). The Court thus turns to Defendant's surviving arguments.

**A. Defendant's Jury Trial Right**

Whether a defendant was entitled to a jury trial is a question of law reviewed de novo. *United States v. Stanfill El*, 714 F.3d 1150, 1152 (9th Cir. 2013). "It has long been settled" that the Sixth Amendment's jury-trial guarantee does not reach petty offenses. *Blanton v. City of N. Las Vegas, Nev.*, 489 U.S. 538, 541 (1989) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 159 (1968)). An offense punishable by a maximum prison term of six months or less is presumptively petty. *Id.* at 543. Here, Defendant concedes that the six-month statutory maximum of § 1325(a)(1) makes it a presumptively petty offense.

However, the presumption is rebuttable. "A defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Blanton*, 489 U.S. at 543. "In performing this analysis, only penalties resulting from state action, *e.g.,* those *mandated* by statute or regulation, should be considered." *Id.* at n.8 (emphasis added) (citation omitted). Courts should not consider consequences that are merely "speculative in nature." *See id.*

Defendant argues that the impact of a § 1325(a)(1) conviction on his ability to seek asylum, combined with the custodial punishment, clearly reflects a legislative determination that § 1325(a)(1) is a serious offense. The Court disagrees. First, Defendant points to USCIS guidance stating that asylum officers may find that an applicant's illegal entry will weigh against a favorable exercise of discretion. (Br. 10.) Whether an asylum officer *may* find that one of several factors weighs against a favorable exercise of discretion is a speculative consequence that is not mandated by statute or regulation. *See Blanton*, 489 U.S. at 543 n.8. Therefore, the Court should not consider it. *See id.*

Defendant also points to a regulation making asylum unavailable to aliens who entered outside a lawful port of entry. But the asylum bar is not tied to a conviction for § 1325(a)(1) (or any other offense); it applies to "to any alien who seeks refuge in the United States if they entered the country outside a lawful port of entry," regardless of

conviction status. (*See* Br. 10 (citation omitted).) Even a jury acquitting Defendant of the § 1325(a)(1) charge would not have lifted the asylum bar. (*See id.*) Accordingly, the asylum bar is not a penalty of conviction that clearly reflects a legislative determination that § 1325(a)(1) is a serious offense.

Therefore, Defendant was not entitled to a jury trial, and the magistrate judge did not err by holding a bench trial. The Court has rejected this argument before, as have many other courts in this District. *United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *3 (S.D. Cal. Sept. 11, 2020); *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1156–57 (S.D. Cal. 2019); *United States v. Velasquez-Luna*, No. 18-MJ-11463-WQH, 2019 WL 338947, at *2 (S.D. Cal. Jan. 28, 2019); *United States v. Silva-Sosa*, No. 18-MJ-23270-KSC, 2019 WL 1470868, at *4 (S.D. Cal. Apr. 3, 2019). The Ninth Circuit has held similarly in affirming a misdemeanor § 1325 conviction without a jury trial. *See United States v. Rodriguez-Rodriguez*, 742 F.2d 1194, 1195 (9th Cir. 1984) ("[T]he collateral consequences of a misdemeanor conviction [do not] automatically create a constitutional right to trial by jury.").

**B. Sufficiency of Evidence**

As Defendant moved for acquittal at the close of the Government's evidence, the Court reviews de novo whether sufficient evidence exists to support a guilty verdict. *See United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005) (citation omitted). "In reviewing for sufficiency of the evidence, we assess the evidence in the light most favorable to the prosecution, determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] Here, § 1325(a)(1) requires proof that Defendant was (1) an alien and (2) entered or attempted to enter the United States at any time or place other than as designated by immigration officers.

---

[1] *Id.* at 1014–15 (emphasis in original) (citation omitted). The Government notes that some determinations, such as corroboration of Defendant's confession, may be reviewed for clear error. The Court need not resolve this issue, as the Government would prevail under any standard of review.

Defendant concedes that he confessed to both elements. However, Defendant's confession, standing alone, is not enough to sustain his conviction. The "*corpus delicti* rule" requires the Government to introduce "some independent corroborating evidence" supporting the conviction here. *United States v. Valdez-Novoa*, 780 F.3d 906, 922 (9th Cir. 2015) (citation omitted). The rule "does not require the government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession." *Id.* at 923. The Government need only introduce "*some* independent evidence to corroborate the confession"; it is not a "high bar." *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1210 (9th Cir. 2024) (emphasis added) (citation omitted). The corroborating evidence can be circumstantial. *Sandez v. United States*, 239 F.2d 239, 244 (9th Cir. 1956). For example, in *Gonzalez-Godinez*, the Ninth Circuit held that the rule was satisfied where a defendant convicted of attempted illegal entry under § 1325(a) confessed twice and was found "either sliding away from a partially deconstructed border fence or hiding in the nearby brush early in the morning" in a "remote, easy-to-cross area" consistent with the details of his confession. 89 F.4th at 1210–11 (citing *United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009)).

The corpus delicti rule is satisfied here. Like in *Gonzalez-Godinez*, Defendant here "twice admitted" the elements of the crime: once to Agent Smith at the border, then again to Agent Botello at the station. *See id.* And "circumstantial evidence of his behavior at the border supports his confession." *See id.* Defendant ducked down and appeared to hide behind a bush when agents approached, and Smith found him trying to get deeper into the brush. Further, Smith apprehended Defendant at dusk in a rural area where Smith had many prior encounters, 50 to 70 yards from the border and 25 miles from the nearest port of entry. (Tr. 16, 22.) Finally, agents found Defendant jogging north without papers. Therefore, Defendant's behavior also resembles the conduct in other Ninth Circuit decisions holding the corpus delicti rule satisfied. *See United States v. Contreras-Vergara*, No. 24-6033, 2026 WL 323712, at *1 (9th Cir. Feb. 6, 2026) (holding rule satisfied in part because defendant found in bush at night in remote location where illegal crossings

common); *United States v. Mateo-Martinez*, No. 24-257, 2025 WL 1088532, at *1 (9th Cir. Apr. 11, 2025) (holding rule satisfied in part because defendant found hiding in bush miles from the nearest port of entry); *United States v. Nunez-Beltran*, 434 F. App'x 640, 642 (9th Cir. 2011) (holding defendant's repeated admissions and attempt to cross without documentation easily satisfied rule).

A rational trier of fact could interpret this extensive circumstantial evidence to mean that Defendant was an alien attempting to enter illegally with the specific intent to enter free from official restraint. *See Garcia-Villegas*, 575 F.3d at 951 (holding that mode of entry evidence alone can be sufficient corroboration for attempted illegal entry); *United States v. Argueta-Rosales*, 819 F.3d 1149, 1161 (9th Cir. 2016) (citing *United States v. Quintana–Torres,* 235 F.3d 1197, 1200 (9th Cir. 2000)) ("When a person is spotted by border patrol agents crossing into the United States, away from an official port of entry, this alone is compelling evidence that the person intends to achieve not only physical presence in the United States but also freedom from official restraint."). (*Contra* Br. 12.) Defendant argues that he could have been trying to present himself to Border Patrol agents to claim asylum. But the Court must review the evidence in the light most favorable to the prosecution, and such an "imagined motive" is neither relevant nor consistent with Defendant appearing to hide as agents approached. *See Garcia-Villegas*, 575 F.3d at 951. Defendant's alternative theory that he could have been coming from Jacumba Hot Springs (as agents found him equidistant from the border and Jacumba Hot Springs) fails for similar reasons.

## IV.

## CONCLUSION AND ORDER

For the reasons stated above, Defendant's appeal is denied and the judgment of conviction is affirmed.

**IT IS SO ORDERED.**

Dated: October 13, 2026

Hon. Dana M. Sabraw
United States District Judge